UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DORA E. NEEL,** | EDCV 04-01017-MAN |
| **Plaintiff,** | |
| | MEMORANDUM OPINION AND ORDER |
| v. | |
| **JO ANNE B. BARNHART,** **Commissioner of the** **Social Security Administration,** | |
| **Defendant.** | |

Plaintiff filed a Complaint on August 21, 2004, seeking review of the denial by the Social Security Commissioner ("Commissioner") of Plaintiff's claim for supplemental security income benefits ("SSI"). On September 28, 2004, the parties consented to proceed before the undersigned, pursuant to 28 U.S.C. § 636(c). On June 22, 2005, the parties filed a Joint Stipulation in which: Plaintiff seeks an order reversing the Commissioner's decision denying benefits and directing the payment of benefits or, alternatively, remanding this case for a new hearing; and Defendant requests that the Commissioner's decision be affirmed. The Court has taken the parties' Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff originally filed an application for SSI on July 17, 2000, which, following the Commissioner's denial initially and on reconsideration, was not pursued. (Administrative Record ("A.R.") 22-23, 26-35, 61-64.) Plaintiff filed again for SSI on July 1, 2002. (A.R. 65-67.) Plaintiff claims to have been disabled since April 1, 2000, due to depression and trouble concentrating. (A.R. 77, 86, 95, 108, 284-85, 298-99.) She has past relevant work experience as a motel/hotel housekeeper. (A.R. 78, 96, 287-88.)

The Commissioner denied Plaintiff's claims initially and upon reconsideration. (A.R. 24-25, 37-45.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (A.R. 46-48.) On December 2, 2003, Plaintiff, who was represented by counsel, testified at a hearing before ALJ Barry M. Wesker. (A.R. 276-318.) On May 21, 2004 the ALJ issued a decision finding that Plaintiff was not disabled (A.R. 7-16), and the Appeals Council subsequently denied Plaintiff's request for review of the ALJ's decision (A.R. 3-6).

**SUMMARY OF ADMINISTRATIVE DECISION**

In his May 21, 2004 written decision, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since her alleged onset of disability on April 1, 2000. (A.R. 11, 15.) The ALJ found that Plaintiff's depressive disorder and mixed personality disorder constitute "severe" impairments. (A.R. 13, 15.) However, the ALJ concluded that Plaintiff does not have an impairment or combination

2

of impairments listed in, or medically equivalent to, an impairment listed in Appendix 1, Subpart P, Regulation No. 4. (*Id.*)

The ALJ found that Plaintiff's "retains the residual functional capacity to perform the mental demands of work, but has moderate limitations in her ability to interact with the public, supervisors and/or coworkers." (A.R. 13, 15.) Based on this finding and the testimony of the vocational expert, the ALJ concluded that Plaintiff could perform her past relevant work as a motel/hotel housekeeper,[1] because it "required only marginal contact with the public and no more than intermittent contact with supervisors and/or coworkers." (A.R. 14-15.) Accordingly, the ALJ found that the Plaintiff is not disabled within the meaning of the Social Security Act. (A.R. 15.)

## STANDARD OF REVIEW

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). The Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the

---

[1] At Plaintiff's hearing, the vocational expert testified that Plaintiff's past work as a hotel/motel housekeeper is "unskilled, light" work. (A.R. 14, 316.) "Light work" involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 416.967(b), 404.1567(b).

conclusion." Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y. of Health and Human Serv., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence. *Id*. at 1041; *see also* Morgan v. Comm'r. of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Flaten v. Sec'y., 44 F.3d 1453, 1457 (9th Cir. 1995).

**DISCUSSION**

Plaintiff alleges two issues. First, Plaintiff contends that the ALJ failed to consider properly the opinion of her treating physician, Dr. C. Krishna Murthy, that Plaintiff is disabled based on her mental limitations. (Joint Stip. at 2-4.) Second, Plaintiff contends that the ALJ improperly failed to consider the findings of a state agency consultant, M. Becraft, M.D., in determining Plaintiff's mental residual functional capacity ("RFC"). (Joint Stip. at 2, 7-8.)

///
///

**A.   The ALJ's Failure To Address Plaintiff's GAF Score Does Not Warrant Reversal.**

As Plaintiff correctly notes, the ALJ stated, in analyzing Plaintiff's RFC, that "there was no opinion evidence related to [Plaintiff's] ability to work." (A.R. 14.) Plaintiff contends that the ALJ's statement is inaccurate because, at the time Plaintiff was initially evaluated for treatment, her Global Assessment of Functioning score ("GAF") was assessed at 49.[2]

In March 2000, Plaintiff commenced taking a low dose of Paxil, a well-known anti-depressant medication. (A.R. 157.) On April 20, 2000, Plaintiff sought treatment at Barstow Counseling and Mental Health Center; she was evaluated initially by a marriage and family counseling therapist, Deborah Miller. (A.R. 157, 163-69.) As a part of her intake evaluation, Miller assessed Plaintiff's GAF at 49. (A.R. 165.) On April 29, 2000, Plaintiff had a medication visit with Dr. Murthy, who increased the dosage of Plaintiff's Paxil prescription. (A.R. 156.) On June 1, 2000, Plaintiff had an initial coordination meeting with Miller. (A.R. 155.) On June 17, 2000, Plaintiff again had a medication visit with Dr. Murphy. (A.R. 154.) On that same date, Dr. Murthy co-signed Miller's April 20, 2000 evaluation diagnosis, which included the GAF score of 49. (A.R. 165.)

---

[2] A GAF score of 41-50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessive rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., few friends, unable to keep a job)." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS TEXT REVISION, 34 (4th ed. 2000)("DSM-IV").

Plaintiff argues that Dr. Murthy's June 17, 2000 co-signature constitutes a treating physician "opinion" that Plaintiff is unlikely to be able to work successfully. Plaintiff contends that the ALJ, by his above-quoted "no opinion evidence" statement, rejected this opinion and erred by failing to provide specific and legitimate reasons for its rejection. (Joint Stip. at 3-4.)

The standards governing an ALJ's treatment of physician opinions are well-established. Briefly summarized, a treating physician's opinion ordinarily should be given great weight, if not controlling weight. *See* Magallanes v. Brown, 881 F.2d 747, 751 (9th Cir. 1989)(quoting Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)); 20 C.F.R, §§ 404.1527(a), 416.927(a); Social Security Ruling 96-2p. The treating physician's opinion is afforded great deference because "'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" Morgan, 169 F.3d at 600 (quoting Sprague, *supra*). When the ALJ rejects the opinion of a treating physician, even if it is contradicted, the ALJ may reject that opinion only by providing specific and legitimate reasons for doing so, supported by substantial evidence in the record. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1990). Broad and vague reasons will not suffice for rejecting a treating physician's opinion. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). Nonetheless, the ALJ may reject the opinion of either a treating or examining physician if that opinion is conclusory, brief, and unsupported by clinical findings. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992).

The Commissioner contends that neither GAF scores in general nor the GAF score in issue here constitute "opinions" regarding a claimant's ability to work, within the meaning of the above-noted legal standards. It is true that a GAF score is not determinative of a mental disability for social security claim purposes. *See* Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50764-50765 (August 21, 2000)("We did not mention the GAF scale to endorse its use in the Social Security and SSI disability programs. . . . [The GAF scale] does not have a direct correlation to the severity requirements in our mental disorder listings"). Nor is it an "absolute determiner of an ability to work." Lewis v. Barnhart, 460 F. Supp. 2d 771, 785 (S.D. Tex. 2006); *see also* Howard v. Commissioner, 276 F.3d 235, 241 (6th Cir. 2002)(rejecting the claimant's argument that the ALJ, when determining her RFC, improperly failed to consider the GAF score assessed by her treating physicians, reasoning that, "[w]hile a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy.").

The Ninth Circuit has not opined on whether a GAF score, on its own, constitutes a physician "opinion" subject to the above-noted standards. However, even if, as Plaintiff contends, the ALJ should have expressly acknowledged Dr. Murthy's June 2000 sign-off on the therapist's initial intake assessment that Plaintiff had a GAF score of 49, the ALJ's failure to do so does not constitute an error that warrants reversal. It is improper for an ALJ to develop an evidentiary record without "fully accounting for the context of materials or all parts of the testimony and reports." Reddick v. Chater, 157 F.3d 715, 723 (9th Cir. 1998). Therefore, the ALJ would have committed error if

7

he had deemed the April 2000 GAF score of 49 to constitute Dr. Murthy's "opinion" regarding Plaintiff's ability to work without taking into account all of the related treating records, which paint a different picture than that now argued by Plaintiff.

Dr. Murthy's initial treatment records from 2000 note that Plaintiff reported a long history of depression, low self-esteem, difficulty dealing with stress, poor coping and interpersonal skills, and of abuse of multiple substances. These treatment records contain no statements by the physician opining about Plaintiff's ability to work. (A.R. 139, 141, 143, 146, 154, 156.) On December 5, 2000, at a case staffing meeting attended by Dr. Murthy, Miller, and others, the attendees considered Plaintiff's request that Dr. Murthy sign a form declaring Plaintiff to be "'incapacitated from work," so that she would be exempt from the requirements of the Cal Works program. (A.R. 140.) Miller -- the therapist who seven months earlier assessed Plaintiff with a GAF score of 49 -- noted her "belief from knowledge of [Plaintiff's] case that [Plaintiff] is not incapacitated and that it is my opinion that [Plaintiff] is able to meet her requirements [for the Cal Works Program]." (*Id.*, emphasis in original.) Miller asked the physician to consider this when he saw Plaintiff for her scheduled appointment that month. (*Id.*) The treating records do not contain any indication that Dr. Murthy signed the Cal Works-related form as requested by Plaintiff.

Following a break in treatment, Plaintiff again requested treatment, in late June 2001, at the Victor Valley Counseling facility. (A.R. 235-40.) At the same time, Plaintiff participated in a rehabilitation program and reported, in July 2002, that she was "doing

8

well" in that program.  (A.R. 222, 235, 239.)  She continued to see Dr. Murthy intermittently in 2001-2003.  (A.R. Exs. 7F, 9F, *passim*.)  In January 2002, Plaintiff told Dr. Murthy she was "doing fine," "fe[lt] good," and was not on any medication.  (A.R. 229.)  In February 2002, Plaintiff reported to Dr. Murthy that she still did not need medication, was feeling positive, and was working.  (A.R. 228.)  In April 2002, Plaintiff began taking Paxil again, but stated that she "fe[lt] good." (A.R. 226.)  In October and November 2002, Plaintiff told Dr. Murthy she was attending college and wanted to become a certified nurse's assistant.  (A.R. 218-19.)  In January 2003, Plaintiff reported to Dr. Murthy that she "fe[lt] good" and remained in college.  (A.R. 216.)  In April 2003, Plaintiff reported feeling positive.  (A.R. 273.)  In May 2003, Plaintiff reported that she was working with Meals on Wheel and felt better with her medication.  (A.R. 272.)  In short, Dr. Murthy's treating records indicated that, notwithstanding the initial assessment that Plaintiff had a GAF score of 49, her condition had improved and she was able to attend school and work.[3]

The ALJ discussed the above Victor Valley Counseling records in his opinion in detail.  (A.R. 12-13, discussing Exs. 7F and 9F.)  An ALJ's burden in rejecting a treating physician's opinion can be met by providing a "'detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'"  Thomas, 278 F.3d at 957 (citation omitted).  In view of the

---

[3] In mid-2001, before these events, Dr. Murthy had re-assessed Plaintiff's GAF score at 55.  A GAF score of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." DSM-IV at 34.

9

history of Dr. Murthy's treatment of Plaintiff *following* his sign-off on the GAF score assessed on Plaintiff's first visit, the initially-assessed GAF score cannot reasonably be viewed as an "opinion" by Dr. Murthy that Plaintiff is unable to work for purposes of her present Social Security claim.

While it would have been appropriate for the ALJ to acknowledge this initial GAF assessment expressly before discussing Dr. Murthy's subsequent treating records in detail, the ALJ's failure to do so is not what led to his ultimate adverse disability finding; indeed, such a conclusion would be fallacious.[4] Accordingly, even if the ALJ's failure to acknowledge expressly Dr. Murthy's June 2000 sign-off on the therapist-assessed GAF score of 49 was error, such error was harmless,[5] because it did not materially impact the ALJ's decision. Put otherwise, because the ALJ's "error, if any indeed existed, was inconsequential to the nondisability determination," substantial Ninth Circuit precedent compels finding it to be harmless. Stout v. Comm'r., Soc. Sec. Admin., 454 F.3d 1050, 1054-55 (9th Cir. 2006)(discussing Ninth Circuit cases applying the harmless error doctrine in the context of Social Security claims). *See also* Batson v. Comm'r. of Soc. Sec. Admin., 359 F.3d 1190, 1195-97 (9th Cir. 2004)(finding an ALJ error that did not negate the validity of the ALJ's ultimate conclusion to be harmless for, even if the ALJ erroneously characterized the claimant's statements regarding

---

[4] In fact, the ALJ's finding that Plaintiff is moderately limited in her ability to interact with the public, supervisors, and co-workers (A.R. 14-15) is consistent with Dr. Murthy's 2001 assessment of a GAF score of 55.

[5] "A decision of the ALJ will not be reversed for errors that are harmless." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

10

his limitations, in the light of the reasons given by the ALJ for finding the claimant to be not credible and for the RFC found, and the objective medical evidence on which he relied, the error was harmless).

Accordingly, for these reasons, the ALJ's failure to address Plaintiff's initial GAF score of 49 in his decision does not warrant reversal.

B. **The ALJ's Failure To Address The State Agency Physician Opinion Does Not Warrant Reversal**.

The ALJ's decision does not expressly address a "Mental Residual Functional Capacity Assessment" form completed by M. Becraft, M.D., a state agency physician, in March 2003. On the check-the-box portion of that form, Dr. Becraft found that Plaintiff had no significant limitations in 17 categories of work functioning and moderate limitations in three categories. (A.R. 257-60.) Plaintiff contends that the ALJ erred in failing to address expressly the three moderate limitations found by Dr. Becraft, which Plaintiff asserts constitute "significant evidence" regarding the severity of her impairment.[6]

Plaintiff's argument selectively focuses on only a portion of Dr. Becraft's opinion, and it ignores Dr. Becraft's ultimate opinion. At the third page of the form, Dr. Becraft was required to explain his 20

---

[6] The three areas in which Dr. Becraft found Plaintiff to be moderately limited are the abilities to: understand and remember detailed instructions; maintain attention and concentration for extended periods; and perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances. (A.R. 257.)

check-the-box findings and set forth his "Functional Capacity Assessment." (A.R. 259.) Dr. Becraft stated that he found Plaintiff to be moderately limited "for sustaining the performance of detailed or complex tasks," but not significantly limited as to any social interaction or adaptation work functions. (*Id.*) Dr. Becraft concluded that Plaintiff has "the RFC to sustain performance of unskilled work." (*Id.*)

The Regulations define unskilled work as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. . . . [A] person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed." 20 C.F.R. §§ 404.1568(a), 416.968(a). As noted earlier, the vocational expert testified that Plaintiff's past work -- hotel/motel housekeeper -- was "light, unskilled work." (A.R. 316.) The ALJ relied on this vocational expert testimony in finding that Plaintiff can perform her past work. (A.R. 14-15.)

The ALJ's conclusion is fully consistent with Dr. Becraft's opinion. Dr. Becraft opined that, notwithstanding the three moderate work-related limitations he found, Plaintiff retains the RFC to perform unskilled work. (A.R. 259.) Plaintiff does not dispute the vocational expert's testimony that Plaintiff's past work was unskilled work. There is no evidentiary basis for concluding that the moderate limitations found by Dr. Becraft would preclude performance of the unskilled work of a hotel/motel housekeeper. A review of the pertinent occupational group listing (323.687-014) set forth in the Dictionary of Occupational Titles for Plaintiff's past work does not indicate that any of the moderate

limitations found by Dr. Becraft would preclude Plaintiff from performing this unskilled work.[7]

In short, if the ALJ had expressly addressed Dr. Becraft's finding of moderate limitations in three categories, as Plaintiff contends the ALJ should have done, it would have made no difference to the ALJ's decision, as Dr. Becraft's opinion, when considered in full and if accepted, would have compelled a finding that Plaintiff *can* perform unskilled work. Thus, the ALJ's failure to acknowledge expressly the portion of Dr. Becraft's "Mental Residual Functional Capacity Assessment" form on which Plaintiff selectively relies, if error at all, was entirely harmless. *See* Burch, 400 F.3d at 682 (although ALJ erred in failing to consider the claimant's obesity at step 2 of the sequential analysis, the error did not warrant reversal, because the claimant's obesity did not meet or equal a listing at step 3 and was considered by the ALJ at step 5 in assessing the claimant's RFC). Because the ALJ found that Plaintiff could perform the same unskilled work she performed in the past and no higher level of work, the ALJ's failure to address expressly Dr. Becraft's opinion that Plaintiff has several moderate work-related limitations that do not preclude her from performing unskilled work was "inconsequential" to his ultimate finding of nondisability and, therefore, does not warrant reversal. Stout, 454 F.3d at 1055. *See also* Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1991)(because the ALJ's erroneous factual conclusions were "immaterial"

---

[7] This work requires only a Level 1 Reasoning level, which requires "[a]pplying commonsense understanding to carry out simple one- or two-step instructions" and "[d]ealing with standardized situations with occasional or no variables in or from these situations encountered on the job."

to his ultimate finding of nondisability, the error was harmless).

### CONCLUSION

Accordingly, for the reasons stated above, the Commissioner's decision denying benefits is AFFIRMED, consistent with this Memorandum Opinion and Order.  Judgment shall be entered affirming the decision of the Commissioner.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: February 12, 2007

/s/
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE